Gregg R. Woodnick, #020736
Leslie A.W. Satterlee, #025219
**GREGG R. WOODNICK, PLLC**
1747 E. Morten Avenue, Suite 205
Phoenix, Arizona 85020
Telephone: (602) 449-7980
Facsimile: (602) 396-5850
office@woodnicklaw.com
*Attorneys for Defendant Marlene Reynolds*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Metropolitan Life Insurance Company, | Case No.: CV-13-01253-PHX-HRH |
| Plaintiff, | **DEFENDANT MARLENE REYNOLDS'S ANSWER AND CROSS-CLAIMS TO INTERPLEADER COMPLAINT** |
| v. | |
| Rosina Reynolds and Marlene Reynolds, | (Assigned to the Honorable Judge H. Russel Holland) |
| Defendants. | |

## ANSWER

Defendant MARLENE REYNOLDS ("Marlene"), through undersigned counsel, hereby Answers the Interpleader Complaint of Plaintiff Metropolitan Life Insurance Company according to its numbered paragraphs, as follows:

### PARTIES

1. Marlene admits the allegations in paragraph 1.

2. Marlene admits the allegations in paragraph 2.

3. Marlene admits the allegations in paragraph 3 and confirms that she is an ex-spouse of Michael Reynolds (the "Decedent") and that she resides in Scottsdale, Arizona.

## JURISDICTION AND VENUE

4. Marlene admits the allegations in paragraph 4.

5. Marlene admits the allegations in paragraph 5.

## CAUSES OF ACTION IN INTERPLEADER

6. Marlene admits the allegations in paragraph 6.

7. Marlene admits the allegations in paragraph 7.

8. Marlene admits the allegations in paragraph 8.

9. Marlene admits the allegations in paragraph 9.

10. Marlene cannot admit or deny the allegations in paragraph 10.

11. Marlene admits the allegations in paragraph 11.

12. Marlene admits the allegations in paragraph 12.

13. Marlene admits the allegations in paragraph 13.

14. Marlene admits the allegations in paragraph 14.

15. Marlene admits that Nancy Mangone wrote a letter to Metropolitan Life Insurance Company ("MetLife") on July 19, 2012, but denies that Rosina is entitled to the life insurance benefits (the "Plan Benefits") under the Alcatel-Lucent Group Life Insurance Plan for Retired Employees (the "Plan").

16. Marlene admits the allegations in paragraph 16.

17. Marlene lacks personal knowledge or information sufficient to admit the allegations in paragraph 17, but Marlene asserts that the Decree of Dissolution of Marriage ("Divorce Decree") and the Marital Settlement Agreement ("Settlement Agreement") constitute a Qualified Domestic Relations Order ("QDRO").

18. Marlene admits the allegations in paragraph 18.

19. Marlene admits the allegations in paragraph 19, but Marlene asserts that Rosina Reynolds ("Rosina") is not entitled to keep the Plan Benefits. If the Plan Benefits are paid to Rosina on the basis of a finding that the Divorce Decree is not a QDRO, then the Plan Benefits would nonetheless be subject to an equitable constructive trust and should be paid to Marlene according to the terms of the Divorce Decree.

20. Marlene admits the allegations in paragraph 20.

21. Marlene denies the allegations in paragraph 21 to the extent that the allegations support a finding that Rosina is entitled to the Plan Benefits.

22. Marlene admits the allegations in paragraph 22 to the extent that they support a finding that MetLife has no interest in the Plan Benefits. Marlene denies that MetLife is entitled to recover its attorney fees.

23. Marlene lacks sufficient personal knowledge or information sufficient to admit or deny the allegations in paragraph 23, but asserts her entitlement to the Plan Benefits.

24. Marlene lacks sufficient personal knowledge or information sufficient to admit or deny the substance of paragraph 24, but does not object to MetLife's proposed deposit of the Plan Benefits into the Registry of the Court.

25. Marlene denies all allegations that are not specifically admitted herein, and furthermore, reserves all affirmative defenses to the extent applicable under the law.

Defendant Marlene Reynolds requests judgment as follows:

A. Order that MetLife deposit the Plan Benefits into the Registry of the Court for distribution upon resolution of this action;

B. Dismiss MetLife from this action;

C. Deny MetLife's request to recover its attorney fees related to this action.

## CROSS-CLAIM

Cross-Plaintiff/Defendant Marlene Reynolds ("Marlene") incorporates her Answer to the Interpleader Complaint and states the following cross-claim against Cross-Defendant/Defendant, Rosina Reynolds ("Rosina").

## JURISDICTION, PARTIES, AND VENUE

26. This cross-claim arises out of the Interpleader Complaint of Metropolitan Life Insurance Company. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has original federal question jurisdiction over this action pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because the action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq*. Alternatively, this Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1335 because two adverse claimants of diverse citizenship claim entitlement to life insurance benefits, the value of which exceeds $500.00.

27. Marlene is a citizen of the State of Arizona and is an ex-spouse of Michael Reynolds (the "Decedent").

28. Cross-Defendant Rosina Reynolds ("Rosina") is a citizen of the State of New Mexico and is an ex-spouse of the Decedent.

## FACTUAL BACKGROUND

29. Marlene married the Decedent on June 30, 1967. Marlene and the Decedent entered into a Marital Settlement Agreement on October 1, 1990 and successfully petitioned for a Decree of Dissolution of Marriage (the "1990 Decree") entered on November 1, 1990, by the Maricopa County Superior Court of the State of Arizona, attached as <u>Exhibit 1</u>.

30. Prior to dissolving their marriage, Marlene and the Decedent were domiciled in Maricopa County in the State of Arizona.

31. The 1990 Decree contains, by incorporation, the following provision:

> Husband [the Decedent] agrees to *obtain and maintain*, through his employment or otherwise, life insurance on his life with coverage in the amount of $197,000.00, and to name Wife [Marlene] as the beneficiary of the life insurance. Proof of such insurance may be reasonably requested by Wife.

*See* Exhibit 1, Marital Settlement Agreement, page 2 (emphasis added).

32. The 1990 Decree also contains, by incorporation, the following provision:

> This Agreement shall be [sic] inure to the benefit of and shall be binding on heirs, assigns, agents, and estates of the parties.

*See* Exhibit 1, Marital Settlement Agreement, page 8.

33. Between the date of the 1990 Decree and the Decedent's death on May 1, 2012, the Decedent married and subsequently divorced Rosina. Decedent's divorce from Rosina was finalized on November 20, 2007 in the State of New Mexico. The New Mexico divorce involved no children and a check-box 'form' decree.

34. Prior to his death, the Decedent was an employee of Alcatel-Lucent and later participated in the Alcatel-Lucent Group Life Insurance Plan for Retired Employees (the "Plan"). The Plan named Metropolitan Life Insurance Company ("MetLife") as claim

fiduciary and provided life insurance coverage in the amount of $161,000.00 (the "Plan Benefits"). The Plan is an employee welfare benefit plan.

35. On May 6, 2003, the Decedent designated Rosina as the sole beneficiary of the Plan Benefits under the terms of the Plan (they divorced a few years later).

36. After Decedent's death, Marlene and Rosina filed adverse claims to the Plan Benefits with MetLife, leading to the filing of this interpleader action.

### CROSS-CLAIM COUNT I.
### CROSS-CLAIM FOR DECLARATORY JUDGMENT THAT MARLENE REYNOLDS IS ENTITLED TO THE PLAN BENEFITS PURSUANT TO ERISA § 1056(d)(3)(A).

37. Although ERISA states that the Plan Benefits may not be assigned or alienated under normal circumstances, 29 U.S.C. § 1056(d)(1), ERISA expressly states that the anti-alienation provision does not apply to a "qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A).

38. ERISA defines a "qualified domestic relations order" ("QDRO") as a domestic relations order "(I) which creates or recognizes the existence of an alternate payee's right to [...] receive all or a portion of the benefits payable with respect to a participant under the plan," and which contains the following four (4) elements:

> (i) the name and last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,
>
> (ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined,
>
> (iii) the number of payments or period to which such order applies, and

(iv)   each plan to which such order applies.

*See* 29 U.S.C. §§ 1056(d)(3)(B)(i)(I)-(II), 1056(d)(3)(C)(i)-(iv).

39.   ERISA defines a "domestic relations order" as "any judgment, decree, or order *(including approval of a property settlement agreement)* which (I) relates to the provision of [...] *marital property rights to a spouse*, child, or other dependent of a participant, and (II) is made pursuant to a State domestic relations law *(including a community property law)*. 29 U.S.C. § 1056(d)(3)(B)(ii)(I)-(II)(emphasis added).

40.   The 1990 Decree is a "domestic relations order" for purposes of ERISA because it approves and incorporates a marital property settlement agreement between Marlene and the Decedent (See Exhibit 2, Marital Settlement Agreement, at page 2) and because it provides marital property rights to Marlene pursuant to Arizona law.

41.   Furthermore, the 1990 Decree meets the four (4) statutory requirements of a "qualified domestic relations order" pursuant to 29 U.S.C. §1056(d)(3)(C)(i)-(iv) as summarized below:

a. Subsection i: Although the 1990 Decree does not include Marlene's last known mailing address, her presence as a party in this action constitutes permissible substantial compliance with the ERISA anti-alienation exemption.[1]

---

[1] *Morris v. Michigan*, 751 F.Supp.2d 955, 959 (D. Mich. 2010). *See also, e.g. Metropolitan Life Ins. Co. v. Bigelow*, 283 F.3d 436, 444 (2nd Cir. 2002) ("order will not be treated as failing to be a qualified order merely because the order does not specify the current mailing address of the participant and alternate payee if the plan administrator has reason to know that address independently of the order")(quoting S.Rep. No. 98-575 at 20 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2547, 2566).

b. Subsection ii: The 1990 Decree creates and recognizes Marlene's right to receive the Plan Benefits in an amount up to $197,000.00 pursuant to the ERISA anti-alienation exemption.

c. Subsection iii: The 1990 Decree contemplates a single payment of life insurance benefits to be made to Marlene.

d. Subsection iv: The 1990 Decree explicitly requires the Decedent to obtain and maintain, through his *employment* or otherwise, a life insurance policy in order to satisfy the $197,000.00 requirement.[2]

42. Only substantial compliance with the requirements of ERISA's anti-alienation exemption is necessary to create a valid QDRO.[3] The 1990 Decree contains the essential information necessary to constitute a valid QDRO that substantially complies with the requirements of ERISA.

Accordingly, Marlene Reynolds requests the following relief in the alternative:

---

[2] *Hartford Life & Acc. Ins. Co. v. Premium Escrow Servs., Inc.*, CIV. 04-1768-PA, 2005 WL 6217077 (D. Or. Aug. 3, 2005) provides the following stringcite:

*See also Tolstad,* 527 N.W.2d at 673 (reference to life insurance policy furnished by decedent's employer was adequate; he "had only one employer and only one insurance plan furnished by that employer"); *Metropolitan Life Ins. Co. v. Bigelow,* 283 F.3d 436, 444 (2d Cir.2002) ("a General Electric insurance plan" was sufficient description); *Smith v. Estate of Smith,* 248 F.Supp.2d 348, 357 (D.N.J.2003) (QDRO need not identify plan "by its specific name" if otherwise clear which plan the order refers to); *Seaman v. Johnson,* 184 F.Supp.2d 642, 647 (E.D.Mich.2002) ("any life insurance policies he may by virtue of his employment have with Chevrolet V-8" was adequate); *Fowler,* 922 F.Supp. at 14 ("any and all life insurance policies by virtue of their employment" deemed sufficient); *Aetna Life Ins. Co. v. Hager,* 930 F.Supp. 343, 347 (E.D.Wisc.1996) ("life insurance that is provided through his employment" sufficient description).

Page **8** of **12**

A. Declare that the 1990 Decree is a QDRO for the purposes of 29 U.S.C. § 1056(d)(3)(A) *et seq*;

B. Order that Marlene Reynolds be paid the Plan Benefits in the amount of $161,000.00, plus accrued interest and subject to applicable fees;

C. Award Marlene's costs and attorney fees pursuant to 29 U.S.C. § 1132(g);

D. Award further relief as the Court deems equitable.

### CROSS-CLAIM COUNT II.
### CROSS-CLAIM FOR ORDER OF CONSTRUCTIVE TRUST OVER PLAN BENEFITS FOR THE BENEFIT OF MARLENE REYNOLDS.

43. Marlene is entitled to life insurance proceeds in the amount of $197,000.00 under the terms of the 1990 Decree. The parties were married for twenty-three (23) years at the time of their divorce.

44. The Decedent was required to obtain and maintain a life insurance policy in satisfaction of the 1990 Decree's $197,000.00 requirement.

45. The 1990 Decree also included a provision that stated that "This [Marital Property] Agreement shall be [sic] inure to the benefit of and shall be binding on heirs, assigns, agents, and estates of the parties." See Exhibit 1, Marital Settlement Agreement, page 8.

---

[3] *Metropolitan Life Ins. Co. v. Marsh*, 119 F.3d 415, 422 (6th Cir. 1997) (enforcing divorce decree as a valid QDRO because it substantially complied with ERISA requirements and did not lack essential information).

46. The Decedent's designation of Rosina as the beneficiary of the Plan Benefits was in violation of the 1990 Decree in the absence of an alternative life insurance policy to otherwise satisfy the 1990 Decree's order.

47. Upon information and belief, Decedent failed to obtain and maintain a life insurance policy except for the Plan.

48. The Decedent and Rosina had been divorced for over five (5) years at the time of his death. There was no requirement, provision or order for the Decedent to obtain or maintain Rosina as beneficiary to any life insurance proceeds in their Decree of Dissolution.

49. Despite the holding in *Carmona v. Carmona*, 603 F.3d 1041 (9th Cir. 2010), Marlene's entitlement to the life insurance proceeds in this case is not extinguished by ERISA as the facts of this case are distinguishable from *Carmona*. For example, this case deals with welfare benefits, not pension plans, which do not have the same strict non-assignability limitations. The Decedent assigned his benefits to Marlene via their negotiated and consented Divorce Decree. The Decedent did not do the same for Rosina in their Divorce Decree. Rosina most certainly could have negotiated and included such a provision in their Divorce Decree, and the fact that she did not, operates as a waiver for her to claim the benefits.[4]

---

[4] *Appleton v. Alcorn*, 291 Ga. 107, 728 S.E.2d 549 (2012) (holding that "…once funds from ERISA-covered plans are received by the proper participant or beneficiary, the participant or beneficiary is not judgment proof …, and the funds are not sheltered from state law causes of action."); *Central States, S.E. S.W. Areas Pension Fund v. Howell*, 227 F.3d 672, 678-79 (6th Cir. 2000)(holding that life insurance proceeds could be impressed by constructive trust when husband changed ERISA plan beneficiary designation in violation of state divorce court injunction); *Morris v. Michigan, infra* (awarding ERISA life insurance plan benefits to designated beneficiary but remanding case for consideration of whether to impose constructive trust to enforce prior state court QDRO).

50. In the event that the Court does not determine the 1990 Decree to be a qualified domestic relations order, the Plan will have to pay the Plan proceeds to Rosina as the last beneficiary per the designation form completed in 2003. This would create a unjust enrichment and a monetary windfall to Rosina as she was not married to the Decedent at the time of his death, had been divorced from him for over five (5) years, was not granted any right to his life insurance policy per the terms of her New Mexico Divorce Decree, and the life insurance proceeds were to be paid to Marlene per her 1990 Decree.

51. Alternatively, if Rosina is awarded the Plan funds, she will become an heir, assign, agent, and/or beneficiary of Decedent's death/estate. As the 1990 Decree was binding on such beneficiaries, the requirement to pay Marlene the life insurance proceeds transfers to Rosina, and therefore, she has a duty to effectuate the terms of the Decree by paying the policy amount to Marlene.

Accordingly, Cross-Plaintiff Marlene Reynolds requests the following relief in the alternative:

    A. Order that MetLife issue the Plan Benefits to Rosina Reynolds subject to a constructive trust;

    B. Order that a constructive trust be imposed to the benefit of Marlene Reynolds in the amount of $197,000.00, plus accrued interest and subject to applicable fees;

    C. Award Marlene's costs and attorney fees in this action;

    D. Award other relief as the Court deems equitable.

**RESPECTFULLY SUBMITTED** this day _4_ of October, 2013.

GREGG R. WOODNICK, PLLC

_____
Gregg R. Woodnick
Attorney for Defendant

COPY of the foregoing document
delivered/mailed this _4_ day
of October, 2013, to:

Stephen M. Bressler, Esq.
Lewis Roca Rothgerber LLP
40 North Central Avenue, 19th Floor
Phoenix, Arizona 85004
Attorneys for Plaintiff

John A. Burick, Esq.
Erik C. Bergstrom, Esq.
Warner Angle Hallam Jackson & Formanek, PLC
2555 E. Camelback Rd., Suite 800
Phoenix, AZ 85016
Attorneys for Defendant, Rosina Reynolds

By: _____